# WM Wisell & McGee, L.L.P.

80-02 Kew Gardens Road, Suite 307 | Kew Gardens, New York 11415
Phone 718-544-0041 | Fax 718-261-0317 | www.wisellandmcgee.com

John T. Wisell
Nancy M. McGee
_____
Ashley R. Graham
Laura Yenchman

November 8, 2013

Hon. Vincent L. Briccetti
United States District Judge
United States Courthouse
300 Quarropas Street, Room 630
White Plains, NY 10601

RE:   U.S. v. Mid Hudson Medical Group, P.C.
      13 Civ. 7898 (VB)

Dear Judge Briccetti:

Please be advised that my firm represents one-hundred fifty two (152) plaintiffs in the more than 260 civil actions filed in Dutchess County Supreme Court against Mid Hudson Medical Group, P.C. and one of their physicians, Spyros Panos, M.D. It has come to my attention that the United States Attorney has submitted a settlement they reached with Mid Hudson Medical Group to you for approval. Before approving the settlement, it is imperative that you understand the basis of that case, since it involves more than Mid Hudson Medical Group's scheme to defraud insurance carriers.

As part of their scheme, one of their orthopedic surgeons, Spyros Panos, performed **thousands** of unnecessary and/or improper surgeries on many of his patients. Thereafter, he billed, or caused his employer (Mid Hudson) to bill for, various procedures that he claimed to perform but did not actually perform. On October 31, 2013, Mr. Panos pled guilty to one count of health care fraud. (13 Cr. 800 (NSR)). A copy of the Information and transcript of the plea and allocution is annexed hereto for your review.

Prior to approving the proposed settlement, I believe it is important for you to understand that this was more than a "paper crime" of insurance fraud for financial gain by Mid Hudson. The thousands of unnecessary and improper surgeries physically injured every one of these people. They were used as the vehicle for these defendants insurance scheme. At present, there

## Wisell & McGee, L.L.P.

are in excess of 260 civil lawsuits pending in Dutchess County Supreme Court, all of which allege that Dr. Panos improperly performed surgeries on the plaintiffs, resulting in serious personal injury, and in some instances death. Additionally, it is alleged that his employer, Mid Hudson, was aware of his actions and did nothing to stop him, and in fact, may have actually encouraged him in this scheme.

At this time, we are asking this court to take into consideration the fact that this was not just a "paper crime." People suffered real injuries for no reason other than the greed of Mid Hudson Medical Group and its employees. While we applaud the government and their work in achieving this settlement on behalf of the government, we ask that this court consider the physical harm caused to thousands of people as part of this scheme.

We would appreciate an opportunity to be heard on behalf of our clients.

Very truly yours,

Nancy M. McGee



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :          INFORMATION

     - v. -          :          13 Cr. 800

SPYROS PANOS,          :

          Defendant.          :

- - - - - - - - - - - - - - - - X

COUNT ONE

(Health Care Fraud)

The United States Attorney charges:

Background

1.    At all times relevant to this Information, SPYROS
PANOS, the defendant, was a board certified orthopedic surgeon
licensed to practice medicine in the State of New York.

2.    At all times relevant to this Information, SPYROS
PANOS, the defendant, practiced orthopedic medicine as part of a
medical group with offices in Dutchess County, New York (the
"Medical Group") and performed orthopedic surgical procedures
("Surgical Procedures") at hospitals in Poughkeepsie, New York.

3.    At all times relevant to this Information, the
Medicare Program ("Medicare") was a federal health care program
providing benefits to people who were over the age of sixty-five
or disabled.  Medicare was administered by the Centers for
Medicare and Medicaid Services ("CMS"), a federal agency under

the United States Department of Health and Human Services
("HHS").

    4.   At all times relevant to this Information, the
New York State Insurance Fund ("NYSIF") was a New York State
agency functioning as an insurance carrier that competed with
private insurers in the workers' compensation and disability
benefits markets and was among the largest providers of workers'
compensation insurance in New York State.

    5.   At all times relevant to this Information,
payments for Surgical Procedures were obtained from Medicare,
NYSIF, and numerous private health insurance providers
(collectively, the "Health Insurance Providers"), all of which
were "health care benefit programs" as defined by Title 18,
United States Code, Section 24(b).

<u>The Scheme to Defraud</u>

    6.   To receive payments for Surgical Procedures from
the Health Insurance Providers, SPYROS PANOS, the defendant, was
required, among other things, to submit, and cause the Medical
Group to submit, information to the Health Insurance Providers
regarding the nature and details of the Surgical Procedures.

    7.   During the period charged in this Information,
SPYROS PANOS, the defendant, performed thousands of Surgical
Procedures, and often as many as twenty or more in a single day,
for which PANOS and the Medical Group submitted claims in excess

2

of $35,000,000 to Health Care Providers.  Health Care Providers,
in turn, paid the Medical Group in excess of $13,000,000 on
claims submitted in connection with the Surgical Procedures.
During the years 2007 through 2011, PANOS received over
$7,500,000 in compensation from the Medical Group.

8.   During the period charged in this Information,
SPYROS PANOS, the defendant, routinely saw at least sixty
patients per office day at the Medical Group, and at times saw
more than ninety patients in a single office day.  Health Care
Providers paid over $3.5 million on claims submitted in
connection with Panos's office visits.

9.   With respect to many of the Surgical Procedures
he performed, SPYROS PANOS, the defendant, furnished, and caused
to be furnished, false information to Health Insurance Providers
(the "Fraudulent Claims") that resulted in the Health Insurance
Providers paying the Medical Group a greater amount than PANOS
and the Medical Group were entitled to receive based on the true
nature and details of the Surgical Procedures PANOS performed.

10.   Among the false representations that were
included in the Fraudulent Claims regarding Surgical Procedures
performed by SPYROS PANOS, the defendant, were the following:

a.   open surgeries were performed, when in fact
PANOS performed the surgeries arthroscopically;

b.    certain techniques and procedures were performed during the course of the Surgical Procedures, when in fact PANOS did not perform them, either because they were not medically necessary or because PANOS performed other techniques and procedures that would have resulted in lower, if any, payments from the Health Insurance Providers; and

c.    loose bodies in excess of certain size criteria were removed, when in fact no loose bodies were removed or the loose bodies that were removed were smaller than the thresholds set by the Health Insurance Providers for payment.

11.   In this manner, SPYROS PANOS, the defendant, defrauded Health Insurance Providers out of over $2,500,000 paid to the Medical Group as a result of the Fraudulent Claims.

12.   Beginning in or about December 2010, SPYROS PANOS, the defendant, attempted to conceal his scheme by, among other things, falsely representing to the Medical Group that the Fraudulent Claims were the result of clerical errors.

Statutory Allegation

13.   From at least in or about 2006, through and including in or about July 2011, in the Southern District of New York and elsewhere, SPYROS PANOS, the defendant, willfully and knowingly executed, and attempted to execute, a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and

4

promises, any of the money and property owned by, and under the custody and control of, a health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, to wit, PANOS, among other things, submitted, and caused to be submitted, false and fraudulent claims for Surgical Procedures to Health Care Providers that included false information concerning the Surgical Procedures he performed.

(Title 18, United States Code, Sections 1347 and 2.)

## FORFEITURE ALLEGATION

14.   As a result of committing the health care fraud offense charged in Count One of this Information, in violation of Title 18, United States Code, Section 1347, SPYROS PANOS, the defendant, pursuant to Title 18, United States Code, Section 982(a)(7) and Title 28, United States Code, Section 2461, shall forfeit all property, real and personal, that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the offense charged in Count One of this Information, including but not limited to $5,000,000 in United States currency, in that such sum in aggregate is property representing the approximate amount of gross proceeds obtained by PANOS and the Medical Group as a result of the health care fraud offense charged in Count One.

## Substitute Assets Provision

15.   If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

(Title 18, United States Code, Section 982(a)(7); Title 21, United States Code, Section 853; Title 28, United States Code, Section 2461.)

PREET BHARARA
United States Attorney

1

Davipanp ag                    PLEA

1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    UNITED STATES OF AMERICA,
3
4              v.                          13 Cr. 800 NSR
4
5    SPYROS PANOS,
5
6                    Defendant.
6
7    ------------------------------x
7
8                                      October 31, 2013
8                                      2:00 p.m.
9                                      White Plains, N.Y.
9
10   Before:
10
11                    HON. NELSON S. ROMAN,
11
12                                      District Judge
12
13                    APPEARANCES
13
14   PREET BHARARA
14        United States Attorney for the
15        Southern District of New York
15   LEE RENZIN
16   DANIEL FILOR
16        Assistant United States Attorneys
17
17   CLAYMAN & ROSENBERG
18        Attorney for Defendant
18   PAUL SCOTT HUGEL
19
19
20   HEATHER TUCCI, HHS
21
21
22
22                    PLEA
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

Davipanp ag                    PLEA

 1              THE COURTROOM DEPUTY:  United States v. Spyros Panos.
 2    Will counsel please state their appearances for the record,
 3    starting with the government.
 4              MR. RENZIN:  Lee Renzin and Dan Filor for the United
 5    States.  With me at counsel table is Heather Tucci of Health
 6    and Human Services.
 7              MR. HUGEL:  Paul Hugel, Clayman and Rosenberg, for
 8    Mr. Panos.
 9              THE COURT:  Good afternoon.
10              MR. HUGEL:  My client's family, his wife, his mother
11    and brother are in the courtroom as well.
12              THE COURT:  Good afternoon.  Before we proceed with
13    the bail issue, I want to make sure that Mr. Spanos is able to
14    hear us and understand us.
15              THE DEFENDANT:  Very well, sir.
16              THE COURT:  Am I coming in loud and clear?  I tend to
17    have a very low voice.  If you can't hear me let me know and
18    I'll do the best I can to adjust accordingly.
19              This is a proceeding in the matter of United States v.
20    Panos, 13 Cr. 800, correct?
21              MR. RENZIN:  Yes, your Honor.
22              THE COURT:  And we have counsel's appearances on the
23    record.  I know that Mr. Spyros Panos is in the courtroom and
24    seated next to his attorney, correct?
25              MR. HUGEL:  Yes.

                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

3
Davipanp ag                    PLEA
1           THE COURT:  Is there an application on behalf of your
2  client, Mr. Hugel?
3           MR. HUGEL:  Yes, your Honor.  At this time the
4  defendant wishes to withdraw his plea of not guilty and to
5  enter a plea of guilty to the information.
6           THE COURT:  And there's only one count in the
7  information?
8           MR. HUGEL:  That's correct.
9           THE COURT:  As to that count, can you just tell me
10  what that is?
11           MR. HUGEL:  One count of health insurance fraud.
12           THE COURT:  Is this plea entered pursuant to a plea
13  agreement?
14           MR. HUGEL:  It is, your Honor.  An original copy of
15  the plea agreement has been handed up to your clerk.
16           THE COURT:  Okay.  And before we administer the oath
17  to the defendant, is there anything that the government would
18  like to say?
19           MR. RENZIN:  No, your Honor.
20           THE COURT:  Okay.  Let's administer the oath to the
21  defendant.
22           (Defendant sworn)
23  BY THE COURT:
24  Q.  Mr. Panos, do you understand that you are under oath and
25  that if you answer any of my questions falsely, your false
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

4

Davipanp ag                    PLEA
1    answers may later be used against you in another prosecution
2    for perjury or for making a false statement?  Do you understand
3    that?
4    A.  Yes.
5    Q.  I intend to ask you questions regarding the facts of the
6    crime alleged by the government.  Do you understand that you
7    have the constitutional right to remain silent and not
8    incriminate yourself?
9    A.  Yes.
10   Q.  I understand that you wish to waive that right for purposes
11   of pleading to the sole count in the indictment, rather, the
12   sole count in the information, is that correct?
13   A.  Yes.
14   Q.  Mr. Panos, if you do not understand anything as we proceed
15   here today, please advise me immediately and I or your attorney
16   will explain it to you more fully.
17   A.  Yes.
18   Q.  Mr. Panos, please state your full name for the record.
19   A.  Spyros Panos.
20   Q.  How old are you?
21   A.  45.
22   Q.  How far did you go as far as your education?
23   A.  I graduated medical school in 1993.
24   Q.  Are you now or have you recently been under the care of a
25   doctor or psychiatrist?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

Davipanp ag                    PLEA
1    A.  Yes.
2    Q.  Have you ever been treated or hospitalized for any mental
3    illness or any type of addiction including drug or alcohol
4    addiction?
5    A.  Can you repeat the question, your Honor.
6    Q.  Have you ever been treated or hospitalized for any mental
7    illness or any kind of addiction including drug or alcohol
8    addiction?
9    A.  Yes.
10   Q.  When was that treatment or hospitalization?
11   A.  The treatment is ongoing currently.
12   Q.  Okay.  In the past 24 hours, have you taken any drugs,
13   medicine or pills or have you consumed any alcohol?
14   A.  I have taken a pill in the last 24 hours.
15   Q.  Is your mind clear at this moment?
16   A.  Very clear.
17   Q.  Are you feeling well today?
18   A.  I'm feeling very well.
19   Q.  Does that medication impede your ability to understand
20   what's going on?
21   A.  Absolutely not.
22   Q.  Do you have a rational, factual basis for understanding the
23   proceeding that has been brought against you by the government
24   and the charges set forth in the information?
25   A.  Yes.

6

Davipanp ag                    PLEA
1              THE COURT:  Does counsel have any doubt as to his
2      client's competence to plead at this time?
3              MR. HUGEL:  No, your Honor.
4              THE COURT:  How about the government?
5              MR. RENZIN:  No, your Honor.
6      Q.  Mr. Panos, your attorney has informed me that you wish to
7      enter a plea of guilty to the crime with which you have been
8      charged by the government in the information.  Is that correct?
9      A.  Yes.
10     Q.  Count 1 charges you with conspiring from in or about 2006
11     to in or about 2011 to commit health care fraud.  Do you
12     understand that?
13     A.  Yes.
14             MR. RENZIN:  If I may, I apologize for the
15     interruption, but it's not a conspiracy count.  It's a
16     substantive health care fraud count.
17             THE COURT:  Okay.
18     Q.  From 2006 to in or about 2011, to commit health care fraud.
19     That's the charge.
20     A.  Yes, sir.
21     Q.  Do you understand that?
22     A.  Yes.
23     Q.  How do you wish to plead to this sole count?
24     A.  I plead guilty.
25     Q.  Are you entering a plea of guilty to the sole count of the
                       SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

7

Davipanp ag                    PLEA

1  information?
2  A.  Yes.
3  Q.  Have you had a full opportunity to discuss your case with
4  your attorney and to discuss the consequences of entering a
5  plea of guilty to the charge set forth in the information?
6  A.  Yes.
7  Q.  Are you satisfied with your attorney and his representation
8  of you in this criminal proceeding?
9  A.  Yes.
10        THE COURT:  On the basis of Mr. Panos' answers to my
11 questions and my observations of his demeanor, I find that he's
12 fully competent to enter an informed plea at this time.  Just
13 for the record, he appears to be alert and quite comfortable.
14 Q.  Before I accepted any plea from you, Mr. Panos, I am going
15 to ask you certain additional questions.  I ask these questions
16 so I am satisfied that the reason you wish to plead guilty to
17 the charges brought against you by the government in this
18 proceeding is that in fact you are guilty and that you fully
19 understand the consequences of a plea.  You should plead guilty
20 only if you are guilty, meaning that you did commit the crime
21 with which the government has charged you, and for no other
22 reason.  Do you understand this?
23 A.  Yes.
24 Q.  Now, are you guilty of the charges brought against you in
25 the sole count of the information?

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

8

Davipanp ag                    PLEA

```
 1   A.  Yes.
 2   Q.  I'm going to describe to you certain rights that you have
 3   under the Constitution and laws of the United States which
 4   rights you'll be giving up if you enter a plea of guilty and I
 5   accept it, so please listen very carefully.  Under the
 6   Constitution and laws of the United States, you have a right to
 7   a speedy and public trial by a jury on the charges against you.
 8   Do you understand that?
 9   A.  Yes.
10   Q.  If there were a trial, you would be presumed innocent and
11   the government would be required to prove your guilt by
12   competent evidence beyond a reasonable doubt.  At a trial, the
13   burden of proving that you are guilty beyond a reasonable doubt
14   would be on the government and you would not have to prove that
15   you were innocent.  Do you understand that?
16   A.  Yes.
17   Q.  If there were a trial, a jury composed of twelve people
18   selected from this district would have to agree unanimously
19   that you were guilty.  Do you understand that?
20   A.  Yes.
21   Q.  If there were a trial, you would have the right to be
22   represented by an attorney at trial and at every other stage of
23   the proceeding, and if you could not afford one, an attorney
24   would be provided for you free of charge.  Do you understand
25   that?
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

Davipanp ag                 PLEA

1   A.  Yes.
2   Q.  If there were a trial, you would have a right to see and
3   hear all of the witnesses against you and your attorney could
4   cross-examine them.  You would have a right to have your
5   attorney object to the government's evidence and offer evidence
6   on your behalf if you so desired.  And you would have the right
7   to have subpoenas issued or other compulsory process used to
8   compel witnesses to testify in your defense.  Do you understand
9   that?
10  A.  Yes.
11  Q.  If there were a trial, you would have the right to testify
12  in your defense if you wanted.  But no one could force you to
13  testify if you did not want to testify.  Further, no inference
14  or suggestion of guilty could be drawn if you were to choose
15  not to testify in your defense at a trial.  Do you understand
16  that?
17  A.  Yes.
18  Q.  Do you understand each and every one of these rights,
19  Mr. Panos?
20  A.  Yes.
21  Q.  Do you have any questions about any of these rights?
22  A.  No, sir.
23  Q.  Do you understand by entering a plea of guilty today you
24  are giving up each and every one of these rights, that you are
25  waiving these rights and that you will have no trial?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
                                                        10
       Davipanp ag                PLEA
 1     A.  Yes.
 2     Q.  Do you understand that you can change your mind right now
 3     and refuse to enter a plea of guilty?
 4     A.  Yes.
 5     Q.  You do not have to enter this plea if you do not want to
 6     for any reason.  Do you understand that?
 7     A.  Yes.
 8     Q.  Do you wish to continue?
 9     A.  Yes.
10     Q.  Mr. Panos, you have received a copy of the information I
11     take it from your attorney.
12     A.  Yes.
13     Q.  Have you reviewed it, have you read it?
14     A.  I have.
15     Q.  By pleading guilty to the charge contained in the sole
16     count summarized earlier by the Court, you are pleading guilty
17     to certain elements or parts of that crime.
18            THE COURT:  I would like the government to summarize
19     the elements in the count.
20            MR. RENZIN:  Count 1, which charges a violation of 18
21     United States Code Section 1347, health care fraud, has three
22     elements.  The first element is that the defendant knowingly
23     executed or attempted to execute a scheme or artifice to
24     defraud a health care benefit program or to obtain money or
25     property owned by or under the custody or control of a health
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

11

Davipanp ag                    PLEA

1   care benefit program by means of false and fraudulent
2   pretenses, representations or promises.  A health care benefit
3   programs is a term defined under Title 18 to be any public or
4   private plan or contract affecting commerce under which any
5   medical benefit, item or service is provided to any individual
6   and that includes any individual or entity who is providing a
7   medical benefit, item or service for which payment may be made
8   under the plan of contract.
9            The second element is that the fraudulent pretenses,
10  representations or promises related to a material fact.
11           And the third element is that the defendant acted
12  willfully and with the intent to defraud.
13           There are actually four elements.  The fourth element
14  is that the defendant did so in connection with the delivery
15  of, or payment for, health care benefits, items or services.
16           And just in addition to those elements, the government
17  would have to prove venue, that is, that the conduct or the
18  offense took place in the Southern District of New York.
19  Q.  Mr. Panos, do you understand the elements of the crime
20  charged?
21  A.  Yes.
22  Q.  Do you understand that the government would have to prove
23  each and every element of this count beyond a reasonable doubt
24  at trial?
25  A.  Yes.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

Davipanp ag                    PLEA

1    Q.   Mr. Panos, the maximum penalties for the sole count of the
2    information are as follows.  The maximum sentence is 10 years
3    in prison.  A maximum term of three years of supervised
4    release.  A maximum fine of the greatest of $250,000, twice the
5    gross pecuniary gain derived from the offense or twice the
6    gross pecuniary loss to a person other than the defendant as a
7    result of the offense.  And a mandatory one hundred dollar
8    special assessment.  Do you understand these to be the maximum
9    possible penalties for this count to which you're pleading
10   guilty?
11   A.   Yes.
12   Q.   Supervised release means that you would be subject to
13   monitoring for a specified period after your release from
14   imprisonment, said monitoring to be under terms and conditions
15   which would could lead to reimprisonment without a jury trial
16   if you were to violate those terms.
17            THE COURT:  Before I proceed, I understand that
18   there's an agreement with respect to restitution?
19            MR. RENZIN:  There are agreements both with respect to
20   restitution and forfeiture.  Actually, with respect to
21   forfeiture, there's --
22            THE COURT:  We're now on any agreement with respect to
23   restitution.
24            MR. RENZIN:  The parties agree that the restitution
25   range is between 2.5 and five million dollars.  But we haven't

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

Davipanp ag                    PLEA

1   fixed an amount yet.
2           THE COURT:  Okay.
3   Q.  Mr. Panos, in addition, the Court may order restitution in
4   accordance with United States Code Title 18 Sections 3663,
5   Section 3663(a), and Section 3664.  Mr. Panos, as we just
6   discussed, you agreed to make restitution in an amount not to
7   exceed five million dollars as part of this agreement.
8           THE COURT:  Correct?
9           MR. RENZIN:  Yes.
10  Q.  Mr. Panos, do you understand that?
11  A.  I do.
12  Q.  Do you understand that the maximum possible penalties under
13  the sole count of the information include up to ten years
14  imprisonment?
15  A.  I do.
16  Q.  Have you discussed the maximum possible penalties with your
17  attorney?
18  A.  I have.
19  Q.  Mr. Panos, I'll going to ask this question but I ask it of
20  all individuals that appear before me when they take a plea.
21  Are you a citizen of the United States?
22  A.  Yes.
23  Q.  I ask this question because as you plead guilty I want to
24  make sure that you understand that if I accept your plea of
25  guilt and adjudge you guilty, such an adjudication may deprive
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

14
Davipanp ag                    PLEA
1   you of valuable civil rights, such as the right to vote, the
2   right to hold public office, the right to serve on a jury, and
3   the right to possess any kind of firearm.  Do you understand
4   that?
5   A.  Yes.
6   Q.  Mr. Panos, under current law there are Sentencing
7   Guidelines that judges must consider in determining your
8   sentence.  I take it that you've spoken to your attorney about
9   the Sentencing Guidelines, is that correct?
10  A.  I have.
11  Q.  Do you understand that the Court will not be able to
12  determine the sentence applicable under the guidelines until
13  after a presentence report has been completed by the Probation
14  Office and after you and the government have had a chance to
15  challenge any of the facts reported by the Probation Office.
16  Do you understand that?
17  A.  Yes.
18  Q.  Do you further understand that even after it is determined
19  what guideline range applies to your case, the Court, meaning
20  I, or whichever judge you appear before for sentencing, has the
21  authority in some circumstances to impose a sentence that is
22  higher or lower than the sentence called for by the guidelines
23  based on other sentencing factors described in Title 18 U.S.
24  Code Section 3553(a), which the Court must consider, although
25  the Court does not have the authority to exceed any applicable
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

15

Davipanp ag                    PLEA
1   statutory maximum or to order a sentence less than any
2   statutory minimum.  Do you understand that?
3   A.   Yes.
4   Q.   Do you understand if your attorney or anyone else has
5   attempted to estimate or predict what your sentence will be, it
6   is possible that this estimate or prediction could be wrong?
7   No one, not even your attorney or the government, can or should
8   give you any assurance of what your sentence will be since that
9   sentence will not be determined until after the Probation
10  Report is complete and the Court has determined whether there
11  are appropriate grounds to depart from the guidelines range.
12  Do you understand this?
13  A.   Yes.
14  Q.   Do you also understand that if your sentence is different
15  from what your attorney or anyone else told you, or it's
16  different from what you expect, you will still be bound to your
17  guilty plea and you will not be allowed to withdraw your guilty
18  plea?
19  A.   Yes.
20  Q.   Finally, do you understand that parole has been abolished
21  in the federal prison system and you will not be be released
22  early from any prison sentence on parole?
23  A.   Yes.
24  Q.   Mr. Panos, I have a copy of the plea agreement.  It's dated
25  October 11, 2013.  Mr. Panos, did you sign this agreement?

16

Davipanp ag                    PLEA

1    A.   Yes.
2    Q.   Did you discuss it with your attorney before you signed it?
3    A.   Yes.
4    Q.   Did you fully understand the agreement before you signed
5    it?
6    A.   I do, yes.
7    Q.   This letter agreement constitutes your entire and total
8    understanding of the agreement between the government and you
9    and your attorney.  In entering into this agreement, do you
10   fully understand and voluntarily consent to comply with all the
11   provisions in the plea agreement that you're making by signing
12   the agreement?
13   A.   Yes.
14   Q.   Do you understand that by signing the plea agreement you're
15   promising to comply with all of these commitments and that your
16   failure or refusal to do so would release the government from
17   any obligation imposed on it by the agreement?
18   A.   Yes.
19   Q.   Has anyone offered you any inducements or threatened you or
20   forced you to plead guilty or to enter into this plea
21   agreement?
22   A.   No.
23   Q.   Do you understand that the Court is completely free to
24   disregard the government's recommendation or position with
25   regard to your sentence and to impose whatever sentence it
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

17

Davipanp ag                    PLEA
1    believes is appropriate under the applicable guidelines and
2    circumstances, and in that event, you would have no right to
3    withdraw your plea?
4    A.   Yes, sir.
5    Q.   Let me ask you some questions about the provisions of the
6    plea agreement.  Do you understand that the plea agreement does
7    not bind any other federal, state or local prosecutorial
8    authority other than the United States Attorney's Office for
9    the Southern District of New York?
10   A.   Yes.
11   Q.   Do you understand that you have agreed to waive any and all
12   right to withdraw your plea or attack your conviction either on
13   direct appeal or collateral on the ground that the government
14   has failed to produce any discovery material, Jencks Act
15   material, exculpatory material pursuant to Brady v. Maryland
16   other than information establishing your factual innocence, and
17   impeachment material pursuant to Giglio v. the United States
18   that has not already been made available as of the signing of
19   this agreement?
20   A.   Yes.
21   Q.   Do you understand that you have agreed that you have no
22   right to withdraw your plea based on any actual or -- this
23   doesn't apply.  This is immigration consequences resulting from
24   the plea of guilty.
25            Do you also understand that you agree you will not
                   SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

18

Davipanp ag                    PLEA
1    challenge your conviction or sentence on the basis of any
2    actual perceived -- you're not an immigrant so this doesn't
3    apply.
4    A.  I am an immigrant.
5                 MR. RENZIN:  But he's a naturalized citizen.
6                 THE COURT:  All right.  I'm sorry.  Counsel, do you
7    know of any reason why your client should not be permitted to
8    plead guilty?
9                 MR. HUGEL:  No, your Honor.
10   Q.  Mr. Panos, I want you to tell me in your own words now what
11   you did in connection with the crime so that you are entering a
12   guilty plea.  Please state when the crimes occurred, where,
13   what happened, and what your involvement with any of the crimes
14   was?
15   A.  Your Honor, from 2006 through 2011, I willingly and
16   knowingly executed a scheme to defraud the health care benefit
17   programs by causing my medical practice, Mid-Hudson Medical
18   Group in Dutchess County, New York, to submit bills to
19   insurance providers that included inaccurate billing codes in
20   order to obtain higher insurance payments than that would have
21   been paid for the procedures I actually performed.
22                THE COURT:  Does the government have any questions
23   about the sufficiency of the allocution with regard to the sole
24   count in the information?
25                MR. RENZIN:  I'm sure it covers it but just to be sure
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

19

Davipanp ag                          PLEA

1   to confirm that the defendant did this willfully, that is, that
2   he did it with the intent to defraud the insurance companies.
3   Q.  Are you aware that what you were doing was wrong?
4   A.  Yes.
5   Q.  And you did so with the intent to gain, I guess, monetary
6   benefits by submitting false claims, in essence?
7   A.  Yes.
8           THE COURT:  Mr. Renzin, would you summarize the
9   evidence that the government would present at trial if this
10  matter were to go to trial and what that evidence would tend to
11  establish beyond a reasonable doubt.
12          MR. RENZIN:  Certainly, your Honor.  If the matter
13  went to trial, the government would offer first evidence in the
14  form of records including insurance and billing records showing
15  what it was that the defendant represented to health care
16  benefit programs that he was doing in the operating room.
17  Those would include billing records and operative reports, the
18  operative note, which was a description of what he claimed to
19  be doing.  The second category of evidence would be in the form
20  of medical records as well as testimony both from lay witnesses
21  and experts to establish what the defendant actually did in the
22  operating room.  So what that evidence together would show
23  would be that defendant told the insurance companies that he
24  was doing one thing when in fact he was doing something else,
25  and that something else would have resulted in a far lower

20
Davipanp ag                     PLEA
1    remunerative benefit to him.  And finally, or in addition, the
2    government would introduce evidence that when the scheme began
3    to come to light, the defendant attempted to cover it up by
4    falsely attributing false statements to clerical errors and
5    that would among other things go to the intent element of the
6    offense.  Finally, the government would establish that the
7    conduct took place in the Southern District of New York.
8    Q.  Mr. Panos, having heard what the government has said
9    concerning the evidence against you in this matter if you went
10   to trial and what the evidence would establish beyond a
11   reasonable doubt, do you agree with what the government has
12   said?
13   A.  Yes.
14   Q.  Having heard me inform you of your right to a trial and the
15   consequences of pleading guilty and the maximum sentence you
16   may face and of the civil rights that you would lose, how do
17   you now plead to the sole count of the information, guilty or
18   not guilty?
19   A.  I plead guilty, your Honor.
20   Q.  Are you pleading guilty because you are in fact guilty?
21   A.  Yes.
22   Q.  Are you pleading guilty voluntarily and of your own free
23   will?
24   A.  Yes.
25            THE COURT:  Because you've  admitted that you're
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

Davipanp ag                    PLEA

1  guilty as charged in the sole count of the information, because
2  you know your rights and are waiving them, because your plea is
3  entered voluntarily and knowingly and is supported by an
4  independent basis in fact containing each of the essential
5  elements of the offense, I accept your guilty plea, Mr. Panos,
6  and adjudge you guilty of the offense of the sole count in the
7  information to which you have pled.
8           Mr. Panos, it's my understanding that the Probation
9  Office will next prepare a presentence report to assist the
10 Court in sentencing you.  You'll be interviewed by a probation
11 officer.  It's important that the information you give the
12 probation officer be truthful and accurate.  The report is
13 important in my decision as to what your sentence will be.  You
14 and your attorney will have a right and will have an
15 opportunity to examine the report, challenge or comment upon
16 it, and speak on your behalf before sentencing.  Does the
17 government propose a date for sentencing?
18           MR. RENZIN:  Your Honor, your Honor's deputy provided
19 us with a date of March 7, 2014 at 11:00 a.m.
20           THE COURT:  Yes, she did.  So it's March 7, 2014 at
21 11:00 a.m.  Just so that the record is clear, the plea
22 agreement is dated October 11, 2013 and will be marked as a
23 court exhibit.  And that's number 1.  Is there anything else
24 that I need to hear from the government?
25           MR. RENZIN:  There is, your Honor.  We handed up to
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

Davipanp ag               PLEA
1   the Court's clerk a signed consent preliminary order of
2   forfeiture.  We ask that the Court allocute the defendant on
3   that and so order that it's acceptable.
4           THE COURT:  Before we proceed to the forfeiture, is
5   there anything that you would like to say, counsel, with
6   respect to the plea?
7           MR. HUGEL:  No, your Honor.
8   Q.  Mr. Panos, I have the consent preliminary order of
9   forfeiture/money judgment.  Have you had an opportunity to read
10  this document?
11  A.  Yes, your Honor.
12  Q.  And did you have an opportunity to discuss this document
13  with your attorney?
14  A.  Yes.
15  Q.  Was it thoroughly explained to you?
16  A.  Yes.
17  Q.  Do you understand that there will be a monetary judgment
18  entered according to this document in the amount of five
19  million dollars?
20  A.  I do.
21  Q.  Do you understand that it is a final judgment entered upon
22  consent?
23  A.  I do.
24  Q.  And that this is part of your sentence?
25  A.  Yes, sir.

23

Davipanp ag                    PLEA

1   Q.  And it shall be included in the judgment of conviction.  Do
2   you understand that?
3   A.  Yes, sir.
4   Q.  There's also a method of payment.  Was that explained to
5   you, how the method of payment was to be made?
6   A.  No, your Honor.
7           (Counsel consults with his client)
8   A.  Yes, Judge.
9   Q.  Do you understand that by signing this document you, in
10  essence, are authorizing or permitting the United States
11  Attorney's Office to conduct discovery, if needed, to identify
12  and locate funds which they deem appropriate for forfeiture for
13  purposes of satisfying this judgment?  Do you understand that?
14  A.  Yes, your Honor.
15  Q.  Do you also understand that if you violate this agreement,
16  this forfeiture agreement, that I have jurisdiction over this
17  agreement and you can be called back before me for purposes of
18  enforcing this agreement?
19  A.  Yes, sir.
20  Q.  Did you sign this voluntarily?
21  A.  I did.
22  Q.  Did anyone force you to sign this or coerce you in any way?
23  A.  No.
24          THE COURT:  Do you have any questions with respect to
25  the allocution on the forfeiture agreement?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

24

Davipanp ag                         PLEA

```
 1              MR. RENZIN:  No, your Honor.
 2              THE COURT:  Is there anything further that we need to
 3    address?
 4              MR. RENZIN:  Not from the government.
 5              THE COURT:  Mr. Panos, the only thing I'm going to say
 6    to you is that you appear to have a lot of support.  That's a
 7    very positive sign.  I pray for you and your family that all
 8    goes well from here on in and I wish you best of luck.
 9              MR. HUGEL:  One other thing.  I think we should put on
10    the record that bail is going to be continued.
11              THE COURT:  Just so we're clear, the consent
12    preliminary order of forfeiture/money judgment is going to be
13    deemed marked as Court's Exhibit 2.  Are there any issues with
14    respect to bail?
15              MR. RENZIN:  No, your Honor.
16              THE COURT:  They're going to continue as they remain
17    in force?
18              MR. RENZIN:  That's the government's request.
19              THE COURT:  And he's currently out on bail?
20              MR. RENZIN:  Yes, your Honor.
21              THE COURT:  You have family support.  That means a
22    great deal.  I'll see everybody back here on October 7, 2014.
23              THE COURTROOM DEPUTY:  The Court is in recess; all
24    rise.
25              (Proceedings adjourned)
```